Good afternoon, your honors. May it please the court, I'm Chad Hackfield, attorney representative for Mr. Lanning. I would like to defer three minutes for rebuttal. I would like to start where the administrative law judge hearing concluded. In closing argument, I present Mr. Lanning's claim was primarily based on his right hip condition and cited that Drs. Woliver, Henderson, and Pelosi each opined that Mr. Lanning was limited to less than a sedentary RFC and would meet listings 1.02a before the surgery and 1.03 after the surgery, which listings involved ineffective ambulation. It was expressly contended that although Dr. Henderson opined a sub-sedentary RFC for only three months following the surgery, Dr. Pelosi gave the opinion that such a limitation would extend for at least 12 months. A sub-sedentary RFC is not only supportive of equivalence of a listing, but for Social Security ruling 96-8p, it demonstrates disability by an inability to sustain full-time work at even the least demanding exertional level. On each of these important, even dispositive issues, the ALJ was completely or effectively silent. Part of the problem here was that the ALJ was focused on whether he had demonstrated disability from the time of the hearing forward, i.e. whether he would have a show one year. Correct, Your Honor. The net result being that it might have been appropriate to cut off the benefits at some point in the past, but that he didn't really account for the entire period between, what was it, 2014 and when was the hearing? The hearing was in 2017. Go ahead. Yeah, and that's right, Your Honor. In fact, the right hip, the judge only gave one paragraph on the right hip, and it was just the facts leading up to the surgery, the total hip replacement, and then after that followed 13 words, which he just stated that the one follow-up visit thought he was doing well. What this does is we look at what the ALJ actually asserted, and it's what we must do in this case, and not allow post hoc rationalization. We see that Dr. Woolliver did give an opinion in May of 2015, and to this the ALJ only asserted that it was rejected because at that time he was having significant heart problems, which later were resolved or partially resolved. However, if we look at this exhibit, Dr. Woolliver, under the chief complaint listed number one was hip pain. On the following page, Dr. Woolliver lists each impairment and gives a separate rating for each one. The hip pain was evaluated as a severity level five, the most significant limitation, demonstrating a limitation in effective standing, walking, lifting, and caring. This is an independent basis for finding support for a sub-sedentary RFC and also for meeting up the listings 1.02a prior to the total hip replacement. On this, the ALJ was completely silent. Furthermore, we have Dr. Pelosi, who is a trained physician with significant experience with the Social Care Disability Program and rendering opinions therein. We see in the judge's decision on page 21, he notes, as for the opinion evidence in determining the way to be given the assessments, the underside is required to consider the understanding that an acceptable medical source has of our disability programs and their evidentiary requirements and the extent to which an acceptable medical source is familiar with the other information in the individual's case record. In this case, he gave great weight to Dr. Page on the psychological issues, noting he was familiar with the Social Security Administration Disability Program. Here, we saw the string citation to Dr. Pelosi, who has a case showing even in the same year she gave this opinion in this case, she was actually contracted by the Social Security Administration, was actively giving opinions in Social Security Disability cases. Facing the weight and the reliance the judge gave on this, the persuasiveness of having this kind of experience, it is reasonable that Dr. Woliver's opinion would have been found to be supportive and consistent with the record in the evidence. Importantly, as noted, the government concedes that it was error not to address Dr. Pelosi's opinion, but they say it was harmless because all she was doing was basing her opinion on Woliver and Henderson, who the ALJ had already discounted. Can you address why you think it was prejudicial? Yes, correct. Well, the most clear one is that Dr. Henderson had given the opinion that it would only be three months sub-sedentary following the total hip replacement. However, Dr. Pelosi gave the opinion that based on the chronic nature of the condition, multiple surgeries that he's had on that hip and his other conditions, that the duration would last for 12 months. So therefore, the reasons asserted by the ALJ to reject Dr. Henderson's opinions would not apply to Dr. Pelosi's opinion. This is an unusual situation because usually the non-examining physicians appointed by, are given, it's always disturbing to me, they are, who just look at the paper, are given weight even when they disagree with the examining physician. So it doesn't seem very, if you can disagree with them on paper, I don't know why you can't agree with them on paper. It doesn't make a lot of sense. That is saying, the fact that you're basing your opinion on what other people said, these people are always basing their opinion on, because they're not examining anything. That's correct. That's the whole setup of the social security process, where the social security administration contracts these people to do that. I mean, this is commonplace. This is the practice of social security disability hearings. And the reasons asserted by the ALJ, which is the only thing we can turn to, do not address the issues raised by Dr. Pelosi. And as stated before, the reason the ALJ gave for rejecting the opinion of Dr. Woolliver was based on only one condition, where Dr. Pelosi is actually the only person who got to evaluate both Dr. Woolliver and Dr. Henderson's opinions, and actually reviewed and gave an opinion after the total hip replacement surgery. This was only, the error was only further shown by the fact that Dr. Pelosi ended up being correct in all these things. We see the last treatment record in June of 2017 is stating that due to ineffective ambulation, he was tripping and falling over his walker, and his pain was getting worse. We see also that this hip condition, as Dr. Woolliver said, was precluding effective ambulation, it eventually became something to where Dr. Henderson stated, yes, we need to do a total hip replacement in an individual under the age of 50 years old. This error also pervaded into the meeting and equaling of the listings as effective ambulation, namely in this case, it was the ability to ascend and descend a staircase needing more than one handrail, and the ability to rock at a reasonable pace on uneven surfaces was not addressed by the ALJ. And when we see Dr. Woolliver's opinion, the section that he missed and did not address in that opinion, we see that's direct evidence supporting of that. And the only reason the ALJ gave, which was one paragraph, and only the last sentence, not being boilerplate language, was that no physician had said that a listing had been met. And so the ALJ's argument or assertion here is, hey, since somebody else did not do this work for me, then I'm not going to do it. However, if he had saw Dr. Pelosi's opinion, we'd see that there was support for ineffective ambulation. If he had evaluated full Dr. Woolliver's opinion, he would have saw that there was support for ineffective ambulation. And furthermore, we also see later that Mr. Manning testified a great deal about ineffective ambulation. And to this, the ALJ was again silent and made no comment regarding not rejecting and not evaluating that testimony. And I'd like to defer the remainder of my time. Thank you. Thank you very much. Your final time, Mr. Nelson. Lars Nelson on behalf of the Commissioner of Social Security. I'm not hearing you very well. Better? Yes. I hope you don't have to stand there holding it the whole time. I'm happy to do so. I would like to begin by addressing the issue of Dr. Pelosi's opinion and explaining why, in the context of this case, it is harmless error. First, the ALJ did not address Dr. Pelosi's opinion, but the ALJ did address seven other opinions, as well as dedicating a paragraph to each impairment, as well as the claimant's activities and substance abuse issues. This was a case where the ALJ did consider all of the breadth of the evidence. Second, turning to Dr. Pelosi's opinion, he's a non-examining doctor, which, under this court's precedent, means he was already starting at the lowest rung on the ladder. Furthermore, in this court's case, Thomas v. Barnhart, and it's echoed in many other cases, this court has said that in order for a non-examining medical source to constitute substantial evidence, it has to be supported by independent evidence in the record. And what that has typically meant is evidence that is independent of the evidence underlying the other medical opinions. Well, that's not true at all. I mean, my understanding, having looked at many of these over the years, what typically happens is the non-examining person appointed by the Social Security Administration reads the other files. They don't do anything else. That's all they do. And then they render an opinion. So what's the independent evidence? That's absolutely right, Your Honor. They are reviewing sources, but it's the amount of weight that can be given to the opinion. Often it's given dispositive weight. Quite often. I mean, this is an unusual case because the non-examining physician was more definitive, in some ways at least, than the examining physician. So all of a sudden, because they don't know anything, they're disregarded. But I often feel it's so disconcerting when these people who don't know anything except some records they read become the governing medical opinion because the ALJ chooses to say, well, they pointed out some reasons why I should agree with them and not with the other people. And now we have the opposite problem and they should be totally disregarded? Well, Your Honor, this court, for example, in Lester v. Charter, says that yes, they should be disregarded when they are not supported by independent evidence. Well, what is independent evidence? They never have independent evidence. Well, in fact, they do. The difference is when a medical source who is non-examining relies on evidence that is solely based on the evidence underlying another medical opinion. In general, these non-examining people, because they're not examining, all they're doing is reading records. They don't have any independent evidence, ever. Well, let's take the example of a very small case where there is only one medical opinion and one treatment note. In that case, the non-examining doctor might review that and come to a completely different opinion. But he doesn't have any other evidence. He just has that one medical record. Exactly, Your Honor. So what's the independent evidence? We would say there's no independent evidence. So when is there ever independent evidence with regard to these non-examining, agency-appointed people who just read records? When the non-examining doctors are relying on evidence created by other sources who did not render opinions in the case. Does that ever happen? Is that your experience? Is that the way this usually operates? We read the same records that are being reviewed by ALJ and they give an opinion. What else are they looking at? Well, sure, Your Honor, and there are lots of cases where there are some records from a treating doctor who ultimately renders an opinion. Right, but there's no independent evidence. There's just a lot of different evidence from a bunch of different doctors. Yes, yes, and so the weight of that goes to the extent to which the degree to which the ALJ is allowed to rely on that depends upon whether it's supported by independent evidence. So is it your position that it would have been error for the ALJ to rely on Dr. Pelosi and award benefits? That that was not something you could have done? Well, that would depend upon the weight given to Dr. Woolliver's opinions and Dr. Henderson's opinions. Well, I mean, I guess if your answer to that question isn't, you know, yes, it would have been error. He was not allowed to do that. Then it seems like something of a problem that he didn't say anything about it one way or the other. So this gets back to the question I asked your friend about how could we say that it was harmless not to consider this opinion, which might have made a difference to the outcome. Sure, if the ALJ had credited Dr. Pelosi's opinion, then the ALJ would have to find him disabled. In that case, Dr. Pelosi's opinion would be based on independent evidence because it would be consistent with Dr. Woolliver's opinion and Dr. Henderson's opinion. What do you mean by independent evidence? I really don't understand. What do you mean by independent evidence? So, for example, by contrast, Dr. Hale considered 11 different exam notes at 116 and 117. Not all of those exam notes stem from Dr. Woolliver and Dr. Henderson. Those exam notes that do not are independent evidence. In addition, Your Honor, we could also look at the case of Ryan v. Commissioner of Social Security and Garrison, which have both said that the degree to which a non-examining source's opinion can be supported looks at the extent of their explanation. And here, Dr. Pelosi has provided no explanation for departing from Dr. Henderson's opinion that the claimant was only disabled for three months. He hasn't cited any other evidentiary basis for that. Nothing independent of Dr. Henderson's opinion. Dr. Henderson said that he was projective, first of all, and there was more evidence after that, but it was that he would be disabled for three months after the surgery. He didn't say he wasn't disabled for two years before the surgery. No, no, and in fact, that's not supported by the record in the slightest, Your Honor. That's not supported by the record in the slightest. He obviously had some major problems where he wouldn't have had hip replacement surgery. Certainly, but it didn't prevent him from caring for his disabled wife, which is reflected at 717, 784, 772. It didn't prevent him from engaging in normal daily activities, which were documented at 766 and 763. So, the record as a whole does not support that he had walking problems that would preclude him from working. And in fact, the standard for inability to ambulate effectively at the listing, it's called an extreme limitation at 1.00B2B1. It's someone who can't even initiate, sustain, or complete activities, and if they're using a handheld device, it has to restrict the use of both of the person's hands. And in this case, the claimant was not prescribed any sort of assistive device until after surgery, in this case, Your Honor. I think it's undisputed that Dr. Pelosi only relied on the reports of Dr. Wolliver and Dr. Henderson. I think under the established circuit precedent, that that is not independent evidence such that this Court would ever have credited or allowed the ALJ to rely on Dr. Pelosi's opinion to support the ALJ's decision. And because the ALJ properly discounted Dr. Wolliver's opinion and Dr. Henderson's opinion, this Court should find that, like a stool where the legs have been knocked out, that Dr. Pelosi's opinion just doesn't hold up anymore. And unless the Court has any other questions, I would ask this Court to affirm, because under established precedent, Dr. Pelosi's opinion would not be entitled to wait, and should not constitute evidence that would be prejudicial error by the ALJ not discussing it within the context of this case. Thank you very much. Mr. Hackfield? And I don't envy the position of my colleague who's trying to find basis for the ALJ's decision when there's so much left unsaid. First of all, I think it's important that Dr. Pelosi did give independent rationale. He did state, based on his chronic health conditions and his history of multiple surgeries, that three months is not sufficient, that 12 months was a more appropriate opinion. That is an opinion based on some of the expertise in the social security disability practice, and it is potentially dispositive in this case, and it should be. It cannot just be simply ignored. Also, Dr. Wolliver's opinion was that the ALJ never rejected the complaints of the right hip pain. As far as Dr. Henderson, at page 918, Dr. Henderson had noted that two to three years prior ago, Mr. Lanning was having trouble with his work activities. Then, even simple activities evade living, such as standing, walking, and getting up from a chair. And that's why he decided to proceed with total replacement. Page 802, he could not, Mr. Lanning could not even walk without his morphine medication. Dr. Wolliver had him a level 1.5 times higher than what is supposed to be the amount you're allowed to give morphine, and he was still struggling. He had to have this surgery. So the support is clearly there. And all this comes down to is a request asking that, hey, the ALJ gave one paragraph stating some activities of living without stating how that's not consistent with effective ambulation, which is not just the two-handed walker. That's just one example. The other example is what Mr. Lanning is asserting. And the fact is the judge thought he was camping for fun, recreation, doing major repairs on his home when, in fact, due to his medical condition, he became homeless. It was a motor home in disrepair with his sick wife living in the back of his camp trailer or his truck. They had no other options to do. And he was moving his camp trailer every two weeks to avoid having to pay camping fees. It's very different. And you can see how that gross misunderstanding of the record had verbatim the entire decision. So for these reasons, I ask that Mr. Lanning's case be provided immediate word of benefits and that Dr. Pelosi's, Dr. Wolliver's, and those opinions, which were not even addressed by ALJ, be given their full weight in controlling evidence in this case. Thank you. Thank you very much. Thank both of you. The case of Lansing v. Sala is submitted. We are going to hear next the argument in Marquez-Rez v. Barley. We'll then take an immediate break after that next case.
judges: Berzon, Gleason, Miller